# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNA PAULINA LUNA FOR CONGRESS, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL ELECTION COMMISSION, <br><br> Defendant, | Civil Action No.__ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Federal Election Campaign Act ("FECA" or "Act") 52 U.S.C. § 30109(a)(8)(A) for illegal agency delay.

2. Plaintiff seeks injunctive and declaratory relief to compel defendant Federal Election Commission ("FEC" or "Commission") to take action on Plaintiff's administrative complaint alleging violations of 52 U.S.C. § 30118(a), a FECA provision that makes it unlawful for "any corporation…to make a contribution or expenditures in connection with any election to any political office."

3. Section 30118(a) strictly prohibits corporations—such as Twitter, Inc.—from making contributions or expenditures to federal candidates.

4.Plaintiff filed an administrative complaint with the FEC on October 22, 2020 alleging that Twitter, Inc. violated 52 U.S.C. § 30118(a) by refusing to verify Congressional candidate Anna Paulina Luna's Twitter account while promptly verifying the accounts of other candidates in her race, thereby providing valuable corporate resources to certain candidates, while denying the same to Plaintiff. A true and accurate copy of Plaintiff's Administrative Complaint is attached hereto as **Exhibit 1**.

5.The October 22 administrative complaint asked the Commission to find reason to believe that Twitter, Inc. violated section 30118(a) by providing a benefit of concrete value to Plaintiff's political opponents while denying her the same benefit, and also requested an investigation to determine whether a violation had occurred or was continuing to occur. Ex. 1, Admin. Compl. ¶¶ 1-8.

6.FECA provides administrative complainants with a right of action against the FEC if the Commission fails to act on a complaint within 120 days. 52 U.S.C. § 30109(a)(8)(A).

7.Six months after plaintiff filed the administrative complaint, there is no indication that the FEC has taken any action on it.

8.The Commission's prolonged inaction has fostered a "cancel-culture" atmosphere where corporations such as Twitter can influence elections by selectively providing valuable benefits to certain candidates while denying the same valuable

benefits to other candidates, which is squarely what FECA is meant to prevent. This could take the form of so-called "blue-check verification," as was the case here. But it could also take the form of denying Twitter access entirely, allowing one candidate to use Twitter as a media megaphone while refusing a competing candidate the same platform access.

9. Plaintiff has suffered a direct and concrete financial injury that is traceable to the FEC's inaction. While a Twitter account is generally provided at no up-front cost—nearly anyone with access to the internet may create a Twitter account—verification of that account can be difficult and expensive to procure.

10. A blue checkmark next to the account name conveys credibility and signifies it has been verified and is an account of public interest. Twitter verifies accounts maintained by users in music, acting, government, politics, media and other prominent fields.

11. Twitter places a valuation on access to its platform by allowing users to promote their tweets or accounts for a fee. Twitter, *Create a Tweet Engagements Campaign*, https://business.twitter.com/en/help/campaign-setup/create-a-tweet-engagement-campaign.html.

12. Content posted from a verified Twitter account has a demonstrably higher monetary value than content posted from un-verified accounts. Verified accounts automatically jump to the top of search results. Nancy Scola, *Twitter to*

*Verify All Congressional and Gubernatorial Primary Hopefuls,* POLITICO (Dec. 12, 2019), https://www.politico.com/news/2019/12/12/twitter-vertify-primary-candidates-accounts-083647. Verified accounts received significant boosts in engagement, including a 38% increased engagement on tweets with photos, a 16% boost on tweets with hashtags, and a 28% boost on tweets with videos. Simon Rogers, *What Fuels a Tweet's Engagement?,* Twitter (Mar. 10, 2014), https://blog.twitter.com/en_us/a/2014/what-fuels-a-tweets-engagement.html. This increased engagement is significant for candidates approaching election day.

13. In 2018, Twitter introduced an "Election Labels" feature. Election Labels contain relevant information about a political candidate, including the office the candidate is running for, the state in which the office is located, and district number (where applicable), and is clearly identifiable with a small icon of a government building. Bridget Coyne, *Introducing US Election Labels for Midterm Candidates,* Twitter (May 23, 2018), https://blog.twitter.com/en_us/topics/company/2018/introducing-us-election-labels-for-midterm-candidates.html. Election Labels only appear on *verified* candidate accounts. The week before the 2018 general election, users on Twitter viewed tweets from Election Labeled accounts approximately 100 million times each day, and 13% of election conversation on Twitter in the United States included a tweet from an Election Labeled account. Bridget Coyne, *Helping Identify 2020 US*

*Election Candidates on Twitter,* Twitter (Dec. 12, 2019), https://blog.twitter.com/en_us/topics/company/2019/helping-identify-2020-us-election-candidates-on-twitter.html. Twitter itself promotes that verified accounts are more valuable than non-verified accounts. Verified Election Labeled accounts jump to the top of search results, result in higher engagement with other users, and account for a large portion of election related social media activity on Twitter. By selectively providing verification benefits to certain candidate accounts, Twitter has provided a valuable corporate funded benefit to those candidates, which is prohibited under FECA.

14. By failing to act on Plaintiff's complaint within 120 days as prescribed by FECA for such action, the Commission has encouraged other social media platforms to follow suit by providing benefits and value to certain candidates while denying the same to others based purely on party affiliation.

**JURISDICTION AND VENUE**

15. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

16. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

17. Plaintiff Anna Paulina Luna for Congress is the authorized candidate committee of Anna Paulina Luna, a Hispanic military veteran who was the Republican nominee for Florida's 13th Congressional District in the 2020 General Election. Anna Paulina Luna for Congress filed the October 22, 2020 FEC complaint and is the Plaintiff in this action.

18. Anna Paulina Luna has filed paperwork with the FEC to run for Congress again in 2022. Anna Paulina Luna for Congress will continue to serve as Anna Paulina Luna's authorized candidate committee.

19. Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## BACKGROUND

### *Governing Law*

20. 52 U.S.C. § 30118(a) prohibits corporations from providing "anything of value" to federal candidates, which the FEC has consistently interpreted to mean that if corporate resources are provided to one candidate, the same resources must be made available to all candidates in order to avoid such corporate resources being treated as a contribution. 11 C.F.R. §§ 114.2(f)(1), 100.52(d)(2), 100.111(e)(1), 114.13.

21. 11 C.F.R. § 114.2(a) prohibits corporations from making a contribution in connection with any federal election.

22. 11 C.F.R. § 114.1(a)(1) defines "contribution" as "any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or *anything of value*… to any candidate, political party or committee, organization, or any other person in connection with any election to any of the offices referred to in 11 CFR 114.2 (a) or (b) as applicable." [Emphasis added].

*Facts*

23. Twitter, Inc., is a for-profit corporation engaged in the business of online social media networking. Twitter's site allows users to send and receive short posts known as "tweets." Twitter is one of the largest social media networking sites in the world with over 330 million active users. *See* Twitter, Q1 2019 Earnings Report, at 5, https://s22.q4cdn.com/826641620/files/doc_financials/2019/q1/Q1-2019-Slide-Presentation.pdf.

24. One of the features of Twitter's site is account verification. Verification is signified by a blue checkmark next to the account name and indicates the account is one of public interest.

25. Twitter has partnered with Ballotpedia, a civic non-profit organization that publishes nonpartisan information on candidates to streamline candidate access to verification and Election Labels. Twitter rules state that for a candidate to be

verified with an Election Label on Twitter, candidates who qualify for the primary ballot for the United States House of Representatives, United States Senate, and Gubernatorial races must meet the following guidelines: (1) register with the relevant federal or state agency before the candidate filing deadline and appear on official candidate lists released by the relevant government election agency after the filing deadline; (2) meet certain Twitter account requirements, including having a profile photo, header photo, bio and website that clearly identifies the candidate; and (3) comply with Twitter's Rules and Terms of Service. Twitter Help Center, *About election labels on Twitter,* Twitter, https://help.twitter.com/en/using-twitter/election-labels.

26. Anna Paulina Luna was the Republican nominee for Florida's 13th Congressional District in 2020. Luna filed her statement of candidacy with the FEC on September 9, 2019.

27. On December 12, 2019, Twitter announced it would start verifying the accounts of all candidates for Congress in the 2020 election cycle. Nancy Scola, *Twitter to Verify All Congressional and Gubernatorial Primary Hopefuls,* POLITICO (Dec. 12, 2019), https://www.politico.com/news/2019/12/12/twitter-vertify-primary-candidates-accounts-083647.

28. On February 7, 2020, Anna Paulina Luna reached out Katie Rosborough of Twitter via email because her campaign account was not yet verified despite meeting all of the requirements in Twitter's rules. Ex. 1-A.

29. Ms. Luna received what appears to be an automated response from "Twitter Government & Elections" regarding her inquiry and directing her to complete the Ballotpedia candidate survey. Ex. 1-A.

30. Ms. Luna responded to the email stating that her Ballotpedia profile had been up to date for a while. She also stated all other candidates in her race had previously been verified. Ex. 1-A.

31. Twitter Government & Elections responded on February 7 stating that her account should be processed on a rolling basis. Ex. 1-A.

32. On March 3, 2020, Ms. Luna again reached out to Twitter via email requesting they investigate her un-verified account. Ms. Luna again explained she was the only candidate in her primary whose account remained un-verified. Ex. 1-B.

33. On March 6, 2020, Twitter Government & Elections responded to Ms. Luna's email reciting Twitter's requirements to receive a verified account badge. Ex. 1-B.

34. On June 11, 2020 Ms. Luna again reached out to Twitter Government & Elections. She stated multiple persons had attempted to solicit contributions

falsely purporting to be for her via Twitter. These impersonations and the resulting diversion of funds from her real campaign were made possible by Twitter's failure to verify her campaign's Twitter account. She stated that she remained the only candidate in her primary whose Twitter account remained un-verified. She again asked Twitter to verify her account. Ex. 1-C.

35. On June 12, 2020, Twitter Government & Elections responded with the identical email sent on March 6, 2020 adding that they would flag her request for their support team to review.

36. On August 18, 2020, Derek Utley, a campaign consultant for Plaintiff Anna Paulina Luna for Congress, reached out to Twitter Government & Politics via email. He stated that Ms. Luna had won the Republican primary election and asked that they proceed with the verification of her account. Ex. 1-D.

37. On August 19, 2020, Mr. Utley followed up on his request asking Twitter Government & Elections to confirm receipt of his email. Ex. 1-D.

38. On August 19, 2020, Twitter Government & Elections responded with the same email sent on March 6 and June 12 adding "Thanks for reaching out here." Ex. 1-D.

39. Mr. Utley responded on August 19 stating that Ms. Luna had won the primary election and met the requirements for account verification and once again asked that Twitter proceed with the verification. Ex. 1-D.

40. Twitter claims its rules apply equally to all: "[w]e treat everyone equally: the same Twitter Rules apply to all." Twitter, *Safety on Twitter*, https://about.twitter.com/en_us/safety.html.

41. Content posted from verified Twitter accounts have a demonstrably higher monetary value than content posted from un-verified accounts.

42. Verified accounts automatically jump to the top of search results. Nancy Scola, *Twitter to Verify All Congressional and Gubernatorial Primary Hopefuls,* POLITICO (Dec. 12, 2019), https://www.politico.com/news/2019/12/12/twitter-vertify-primary-candidates-accounts-083647.

43. Verified accounts receive a significant boost in engagement, including a 38% increased engagement on tweets with photos, a 16% boost on tweets with hashtags, and a 28% boost on tweets with videos. Simon Rogers, *What Fuel's a Tweet's Engagement?,* Twitter (Mar. 10, 2014), https://blog.twitter.com/en_us/a/2014/what-fuels-a-tweets-engagement.html.

44. This increased engagement is significant for candidates approaching election day.

45. In 2018, Twitter introduced an "Election Labels" feature. Election Labels contain relevant information about a political candidate, including the office the candidate is running for, the state the office is located in, and district number (where applicable), and is clearly identifiable with a small icon of a government

building. Bridget Coyne, *Introducing US Election Labels for Midterm Candidates,* Twitter (May 23, 2018), https://blog.twitter.com/en_us/topics/company/2018/introducing-us-election-labels-for-midterm-candidates.html.

46. Election Labels only appear on verified candidate accounts.

47. In the week before the 2018 general election, users on Twitter viewed tweets from Election Labeled accounts approximately 100 million times each day, and 13% of election conversation on Twitter in the United States included a tweet from an Election Labeled account. Bridget Coyne, *Helping Identify 2020 US Election Candidates on Twitter,* Twitter (Dec. 12, 2019) https://blog.twitter.com/en_us/topics/company/2019/helping-identify-2020-us-election-candidates-on-twitter.html.

48. An article from 2012 estimated it then cost approximately $15,000 to get a Twitter account verified. Alexander Abad-Santos, *Twitter Verification Has a Pricetag: $15,000,* The Atlantic (Jan. 10, 2012), https://www.theatlantic.com/business/archive/2012/01/twitter-verification-has-pricetag-15000/333313/.

49. Twitter has never provided an explanation to Plaintiff for its refusal to provide verification, but this disparate treatment is consistent with Twitter's pattern of content based discrimination against conservatives and specifically Anna Paulina

Luna. For example, Twitter temporarily locked Ms. Luna, a veteran of the United States Air Force, out of her account for "sensitive content" when she criticized socialism while dressed in an American military styled uniform. Allum Bokhari, *Twitter Temporarily Restricts Account of GOP Congressional Candidate Anna Paulina Luna,* Breitbart (Mar. 14, 2020), https://www.breitbart.com/tech/2020/03/14/twitter-temporarily-restricts-account-of-gop-congressional-candidate-anna-paulina-luna/

50. Ms. Luna was also temporarily suspended from Twitter when she tweeted the following opposition to socialism and support for Second Amendment rights on August 7, 2019: "I am HISPANIC. I am a NRA MEMBER. I am a veteran. I will not bend the knee to the socialist agenda to ban firearms. I took an oath to defend the people of this nation as well as the constitution. Stop making El Paso political."

## ADMINISTRATIVE PROCEEDINGS

51. On October 22, 2020, Anna Paulina Luna for Congress filed a complaint with the FEC against respondent Twitter, Inc. urging that the Commission find reason to believe a violation of 52 U.S.C. § 30118(a) had occurred, and that it commence an investigation.


52. Plaintiff's October 22 administrative complaint alleged that Twitter, Inc. violated FECA's prohibition on corporate contributions by providing something of value to certain candidates while denying the same to Anna Paulina Luna.

53. Citing Twitter, Inc.'s published articles in its administrative complaint, Plaintiff explained the intrinsic value of a verified account and Twitter's election labeling feature.

54. The FEC responded to the complaint with a letter of acknowledgement dated October 28, 2020 informing Plaintiff that the proceeding would be designated Matter Under Review ("MUR") 7832. Ex. 2.

55. Upon information and belief, the Commission has failed to act on Plaintiff's October 22, 2020 administrative complaint since it was filed well over 120 days ago. The Commission's inaction has thus persisted well beyond the statutorily allotted 120-day response period.

## ONGOING HARM

56. Twitter, Inc. verified the accounts of Plaintiff's opponents while refusing to verify Plaintiff's account, providing something of value to her opponents.

57. While there is mixed guidance on the *precise* value of a verified Twitter account, it cannot be disputed that a verified account has some intrinsic monetary value. *How much is my Twitter worth?*, TweetBinder blog, https://www.tweetbinder.com/blog/how-much-my-twitter-worth/.

58. Anna Paulina Luna's Twitter account remains unverified to date.

59. Anna Paulina Luna has filed a statement of candidacy with the FEC to run for Congress again in 2022. Anna Paulina Luna Statement of Candidacy, May 1, 2021, https://docquery.fec.gov/cgi-bin/forms/H0FL13158/1514902/.

60. Plaintiff has suffered – and continues to suffer – an injury-in-fact that is causally related to Defendant's inaction. Twitter, Inc. continues to selectively verify accounts, providing something of value to certain candidates while denying the same to Plaintiff—likely based on Twitter's political views (though the reason for Twitter's discrimination is irrelevant to this proceeding). An order requiring the FEC to act on this matter would redress Plaintiff's injury.

## CAUSE OF ACTION
### Count I: FECA 52 U.S.C. § 30109(a)(8)(A)

61. Plaintiff repeats and realleges paragraphs 1-60.

62. As a complainant, Plaintiff is legally entitled to have the FEC "act on [its] complaint during the 120-day period beginning on the date the complaint is filed." 52 U.S.C. § 30109(a)(8)(A). If the FEC fails to so act, the statute authorizes a complainant to "file a petition with the United States District Court for the District of Columbia." *Id*.

63. Plaintiff having filed a petition, this Court "may declare that the . . . failure to act is contrary to law, and may direct the Commission to conform with

such declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C). If the Commission fails to act, Plaintiff may bring "a civil action to remedy the violation involved in the original complaint." *Id.*

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

1) Declare that the FEC's failure to act on Plaintiff's administrative complaint within 120 days was "contrary to law" under 52 U.S.C. § 30109(a)(8)(A) & (C);

2) Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

3) Declare that if the FEC does not comply within 30 days of this Court's order, Plaintiff may bring a civil action to remedy the violation;

4) Award Plaintiff their costs and reasonable attorneys' fees incurred in this action; and

5) Grant such other relief the Court may deem just and proper.

Dated: May 4, 2021                                        Respectfully submitted,

/s/ Charles R. Spies
Charles R. Spies, Bar ID: 989020
Jessica G. Brouckaert Bar ID: 1671225
1825 Eye Street, NW, Ste 900
Washington, DC 20006
Telephone: (202) 466-5964
Facsimile: (844) 670-6009

cspies@dickinsonwright.com
jbrouckaert@dickinsonwright.com

Robert L. Avers, Bar ID: MI0083
350 S. Main St, Ste 300
Ann Arbor, MI 48104
Telephone: (734) 623-1672
ravers@dickinsonwright.com

John J. Bursch*
Bursch Law PLLC
9339 Cherry Valley Ave. SE, #78
Caledonia, MI 49316
Telephone: (616) 450-4235
Jbursch@burschlaw.com

*Attorneys for Plaintiff*

*Admission Forthcoming*